Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone:  (516) 268-7080
spencer@spencersheehan.com

United States District Court
Southern District of New York                              7:20-cv-08470

| | |
|---|---|
| Eileen Myers, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Wakefern Food Corp., | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Wakefern Food Corp. ("defendant") manufactures, distributes, markets, labels and sells vanilla coconutmilk beverages purporting to be flavored only with vanilla under their Wholesome Pantry brand ("Product").

2.    The Products are available to consumers from retail and online stores of third-parties and are sold in cartons of 64 OZ (1.89L).

3.    The relevant front label representations include "Vanilla," "No Artificial Colors, Flavors or Preservatives," "Coconutmilk" and a picture of vanilla beans, the vanilla flower and a coconut.



4.     The unqualified, prominent and conspicuous representation as "Vanilla" is false, deceptive and misleading because the Product contains trace or a *de minimis* amount of vanilla from real vanilla beans from the vanilla plant, and the presence of vanillin and other artificial flavors is not disclosed to consumers where they are expecting to see it on the front of the Product.

5.      According to recent industry reports, "Food companies are dropping artificial flavors, coloring, preservatives and other additives with scary names and focusing more on natural, wholesome and fresh ingredients."[1]

6.      Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[2]

7.      New Hope Network concluded that "71% of consumers today are avoiding artificial flavors."[3]

8.      Label Insight determined that 76% of consumers avoid artificial flavors.[4]

9.      Consumers are seeking products which obtain their flavor from their characterizing food ingredients, i.e., strawberry shortcake which gets is flavor from actual strawberries as opposed to strawberry flavor synthesized from cherries.[5]

10.     Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

11.     The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for true vanilla flavorings.

12.     The vanilla bean is not consumed by itself – it is heated in the sun for weeks until it is placed in ethyl alcohol, where its flavor constituents are extracted in the solution ("vanilla extract"). 21 C.F.R. § 169.175 ("Vanilla extract.").

13.     Vanilla's unique flavor cannot be duplicated by science due to over 200 compounds scientists have identified, including volatile constituents such as "acids, ethers, alcohols, acetals,

---

[1] Jeff Daniels, Why your favorite foods may be getting new recipes, CNBC, September 19, 2016
[2] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[3] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[4] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[5] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).

heterocyclics, phenolics, hydrocarbons, esters and carbonyls."[6]

14.    An example of the compounds which provide vanilla's flavor are shown in table below, identified through gas chromatography-mass spectrometry ("GC-MS") of a sample of Simply Organic Madagascar Vanilla Extract.

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guaiacol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90669 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 908 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringealdehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
| | 78413588 | Total | 100.0000 |

15.    While vanillin is the most abundant compound (MS Scan # 759, 77.4301 Peak Area %), numerous other compounds contribute to vanilla's taste in small amounts.

16.    Methyl cinnamate (MS Scan # 751) and p-cresol (MS Scan # 415)  provide cinnamon

---

[6] Arun K. Sinha et al., "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.

and creamy flavor notes to vanilla.

17.   Other compounds present in relatively significant amounts include acetovanillone, cinnamyl alcohol, guiaicol, p-cresol, p-hydroxybenzoic acid, vanillic acid and vanillyl ethyl ether.

18.   Consumers want the vanilla in vanilla flavored products to come from a real source, i.e., from vanilla beans from the vanilla plant.

19.   From the time vanillin in the 19th century was first isolated, companies have adulterated their vanilla products with cheap synthetics and substitutes such as vanillin – a substance manufactured in factories from synthetic and non-vanilla bean sources – and powerful additives like maltol and piperonal.

20.   The first efforts to prevent fraud in vanilla products were in the late 19th century by the U.S. Pharmacopeia which required a specific weight of vanilla beans as the source for vanilla extract.

21.   The focus was on the weight of actual vanilla beans, because the main compound of vanillin was used to boost the flavor of a small amount of real vanilla.

22.   During this time, government entities would often seize products which were labeled as "vanilla" but were comprised of "coumarin, vanillin, and caramel."[7]

23.   Consumers are entitled to know "whether the product [they are buying] is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's vanilla flavor is provided by flavorings not derived from vanilla beans."[8]

24.   Congress directed the Food and Drug Administration ("FDA") to establish standards and rules to combat an economic problem: the marketing of foods from which traditional

---

[7] Notice of Judgment, Feb. 10, 1914, 2794. Adulteration of vanilla extract. U. S. v. One Barrel Vanilla. Decree of condemnation by default. Product ordered sold.
[8] Id.

5

constituents are removed or new or different (often cheaper and artificial) ingredients are substituted.

25.    Vanilla products with minimal flavoring from vanilla beans were an example of the type of food for which standards were established.

26.    Vanilla has specific labeling requirements because it is uniquely vulnerable to being adulterated, the most popular and one of most costly flavorings.

27.    The regulations for vanilla labeling apply not only to individual vanilla flavorings sold separately for use in baking and cooking, but to products which designate their main, or characterizing flavor as vanilla.

28.    The vanilla standards have been in place for over fifty (50) years, and companies' adherence to these regulations have benefitted consumers who otherwise would not be able to rely on a product's representations.

29.    Vanillin is characterizing for and imitates vanilla, which means the addition of vanillin, from any non-vanilla sources, must be clearly declared as an artificial flavor. [9]

30.    In terms of potency, one ounce of vanillin is equivalent to the vanillin found in one pound of vanilla beans.

31.    Regulations regarding vanilla effectively establish custom and practice in the industry so that consumers' experience with that custom and practice primes them to infer from a product's labeling whether the represented vanilla flavor is from the vanilla plant.

32.    Where a product's front label representation is "Vanilla" without qualification – "flavored," "artificial flavors" or "with other natural flavors" – "lead[s] consumers to believe that it is flavored with vanilla extract, or another vanilla flavoring derived solely from vanilla beans,

---

[9] Hallagan and Drake.

as defined in the federal standard of identity when in fact it is not.[10]

33.     As "natural, organic and better-for-you trends proliferate, demand has flourished for naturally sourced vanilla."[11]

34.     Manufacturers have responded, "by transitioning from artificial to natural ingredients," including "natural vanilla ingredients."

35.     Global climate disruptions resulting in natural disasters befalling the primary vanilla producing country of Madagascar, have caused vanilla shortages.

36.     This disruption in available vanilla has caused companies to cut corners when it comes to using vanilla in their products.

37.     In early 2018, in response to rampant misleading labeling of vanilla products, the flavor industry, through The Flavor and Extract Manufacturers Association of the United States ("FEMA"), urged companies to truthfully label vanilla foods so consumers are not misled. *See* John B. Hallagan and Joanna Drake, FEMA, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake").[12]

38.     Based on the term "Vanilla" and the absence of any qualifying terms, consumers expect the Product's vanilla taste to be only from vanilla beans, i.e., vanilla extract.

39.     This conclusion is consistent with consumer surveys indicating consumers understand "vanilla" to refer to only vanilla flavor provided by vanilla beans, and not from non-vanilla ingredients.

40.     Likewise, consumers are aware that vanillin and other vanilla enhancing flavors are

---

[10] John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States ("FEMA"), "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at 46, 54, Apr. 25, 2018 ("Hallagan & Drake").
[11] Amanda Del Buono, *Suppliers utilize cost-effective vanilla ingredient solutions*, Beverage Industry (last updated Oct. 14, 2016).
[12] Hallagan and Drake, "There are many current examples of food products that are labeled as 'vanilla' that are clearly mislabeled and therefore in violation of FDA regulations."

artificial flavors when used to boost vanilla.

41.    Nevertheless, the fine print ingredient listing of will not disclose to consumers that (1) the amount of real vanilla in the Product is at most, de minimis and (2) the Product contains artificial vanilla, viz, vanillin and artificial flavors, including maltol and/or piperonal, which provide predominantly all of the vanilla taste.

> **INGREDIENTS:** COCONUTMILK (FILTERED WATER, COCONUT CREAM), CANE SUGAR, CALCIUM CARBONATE, NATURAL FLAVORS, CARRAGEENAN, GUAR GUM, GELLAN GUM, VITAMIN A PALMITATE, VITAMIN D2, VITAMIN B12.

42.    Listing "Natural Flavors" means the Product's vanilla taste is not derived exclusively or even predominantly from vanilla sources because if it did, it would only list "vanilla extract."

43.    Consumers will not realize from the ingredient list, or consuming the Product, that the amount of vanilla flavoring from real vanilla is *de minimis*, compared to the amount provided by vanillin and artificial vanilla flavors.

44.    The Product contains an abnormal excess of vanillin relative to the profile of minor components in a vanilla preparation, which is a strong indicator it contains vanillin from non-vanilla sources.

45.    The Product contains maltol which the FDA lists as an artificial flavor. *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").[13]

46.    Though maltol is sometimes detected in vanilla extract levels between 0.004 and 0.01 PPM, its presence in the Product at levels greatly exceeding this range means it is added to the "Natural Flavors."

47.    Maltol "can improve overall flavor, potentiate sweetness, increase the sensation of

---

[13] 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").

creaminess" and has "a mild flavor and sweet caramel-like odor."[14]

48.     Maltol "can help to smooth authentic style vanilla bean flavors" at modest levels.[15]

49.     The Product contains piperonal (heliotropine), an artificial flavor not found in vanilla. *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").[16]

50.     Piperonal contributes "a sweet vanilla olfactory note as well as a sweet, aromatic, vanilla, and benzaldehyde taste" and imparts "vanilla flavors to food and beverage products."[17]

51.     The flavors and amounts detected support the inferences and allegations that the bulk of the Product's vanilla taste is from artificial vanilla flavoring including vanillin, maltol and piperonal.

52.     The Product's ingredient list is misleading because the "Natural Flavors" contains vanillin from non-vanilla sources, which must be disclosed as an artificial flavor when paired with vanilla. *See* 21 C.F.R. § 169.181(b) ("Vanilla-vanillin flavoring") (requiring ingredient list to state "'contains vanillin, an artificial flavor (or flavoring).'"); Labeling Vanilla.

53.     The addition of vanillin to the Product requires the front label to state "artificially flavored." FDA Letter, Margaret-Hanna Emerick, FDA, to Richard Brownell, February 25, 2016; *See* 21 C.F.R.101.22(i)(2).

54.     By omitting "artificial flavor" or "artificially flavored" from the front label, consumers are not told that the Product's taste is not provided exclusively, or even predominantly, by vanilla beans, but by artificial vanillin, maltol and/or piperonal.

55.     By omitting "artificial flavor" from the ingredient list, consumers are unable to

---

[14] Lisa Kobs, The Sweet Taste of Success – Part Two, Food Ingredients Online, 1998; Maltol, UL Prospector, Bryan W Nash & Sons Ltd.
[15] John Wright, Flavor Bites: Maltol, Perfumer & Flavorist, June 2020.
[16] C. B. Gnadinger, "Piperonal in Vanilla Extract." Industrial & Engineering Chemistry 18.6 (1926): 588-589.
[17] Piperonal, Moellhausen S.p.A., UL Prospector.

"double check" the components of the Product.

56.   The "vanilla" representation on the Product caused consumers, like Plaintiff, to believe that the Product's vanilla taste comes predominantly, if not exclusively, from vanilla.

57.   The Product's front label does not state "contains some vanilla" or "made with a drop of vanilla," but designates the flavor as "Vanilla" without qualifying terms and has pictures of actual vanilla beans and the vanilla flower.

58.   The Product's front label misleadingly claims to contain "No…Artificial Flavors" when vanillin is an artificial flavor.

59.   Plaintiff reasonably believed that the "vanilla" representation on the front label of the Product meant that the vanilla flavor was from vanilla beans and not from non-vanilla sources.

60.   Defendant knows consumers will pay more for the Product because the front label only states "vanilla."

61.   Defendant's omission and failure to disclose the artificial vanilla flavor on the front label is deceptive and misleading to consumers.

62.   Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

63.   Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

64.   The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

65.   Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

66.   As a result of the false and misleading labeling, the Product is an sold at a premium

price, approximately no less than $3.59 per 64 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

Jurisdiction and Venue

67. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

68. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

69. Plaintiff Eileen Myers is a citizen of New York.

70. Defendant Wakefern Food Corp., is a New Jersey corporation with a principal place of business in Keasbey, Middlesex County, New Jersey and is a citizen of New Jersey.

71. "Minimal diversity" exists because plaintiff Eileen Myers and defendant are citizens of different states.

72. Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

73. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase the Product and the misleading representations and/or their recognition as such.

74. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

75.     Plaintiff Eileen Myers is a citizen of New York, Putnam Valley, Putnam County.

76.     Defendant Wakefern Food Corp. is a New Jersey corporation with a principal place of business in Keasbey, New Jersey, Middlesex County and is a citizen of New Jersey.

77.     Defendant operates close to four hundred (400) grocery stores in the mid-Atlantic states.

78.     Most of the stores are operated under the "ShopRite" name.

79.     During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within her district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

80.     Plaintiff Eileen Myers purchased the Product on numerous occasions during 2020, including May 2020, at Shoprite stores, including the ShopRite at 3140 E Main St, Cortlandt, NY 10567.

81.     Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use and relied upon the front label claims to expect its taste only came from the identified front label ingredient of vanilla and that the vanilla taste was provided exclusively and/or predominantly by vanilla beans from the vanilla plant.

82.     Plaintiff was deceived by and relied upon the Product's deceptive labeling.

83.     Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

84.     The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

85.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

<u>Class Allegations</u>

86.    The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

87.    Plaintiff seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

88.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

89.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

90.    Plaintiff is an adequate representatives because her interests do not conflict with other members.

91.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

92.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

93.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

94.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>(Consumer Protection Statute)</u>

95.    Plaintiff incorporates by reference all preceding paragraphs.

96.    Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

Case 7:20-cv-08470-NSR   Document 1   Filed 10/12/20   Page 14 of 19


97.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

98.   Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

99.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial vanilla where a product's flavor is designated "vanilla," without more.

100.   The ingredient list designations fails to tell consumers and plaintiff that the Product contains added artificial flavors that contribute to the Product's vanilla taste.

101.   The front label gives the impression the Product has more real vanilla than it does.

102.   Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

103.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

104.   Plaintiff incorporates by reference all preceding paragraphs.

105.   Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

106.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product.

107.   The ingredient list designations fail to tell consumers and plaintiff that the Product contains added artificial flavors that contribute to the Product's vanilla taste.

108.   The front label gives the impression the Product has more real vanilla than it does

and does not disclose the artificial vanilla flavors.

109.  Defendant had a duty to disclose the non-vanilla, artificial flavors and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

110.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

111.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

112.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

113.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

114.  Plaintiff incorporates by reference all preceding paragraphs.

115.  The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, organoleptic, and/or compositional attributes it did not.

116.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

117.  The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product

118.  The ingredient list designations fail to tell consumers and plaintiff that the Product

contains added artificial flavors that contribute to the Product's vanilla taste.

119.   The front label gives the impression the Product has more real vanilla than it does and does not disclose the artificial vanilla flavors.

120.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

121.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

122.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

123.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

124.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

125.   Plaintiff incorporates by reference all preceding paragraphs.

126.   Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product.

127.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product.

128.   The ingredient list designations fail to tell consumers and plaintiff that the Product contains added artificial flavors that contribute to the Product's vanilla taste.

129.   The front label gives the impression the Product has more real vanilla than it does

and does not disclose the artificial vanilla flavors.

130.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

131.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

132.   Plaintiff incorporates by reference all preceding paragraphs.

133.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and

experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 12, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-08470
United States District Court
Southern District of New York

Eileen Myers, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Wakefern Food Corp.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
   Tel: (516) 268-7080
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  October 12, 2020

/s/ Spencer Sheehan
Spencer Sheehan