IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Eileen Myers, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>- against -<br><br>Wakefern Food Corp.,<br>                Defendant | 7:20-cv-08470-NSR<br><br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Wakefern Food Corp. ("defendant") manufactures, markets and sells coconutmilk purporting to contain a non-negligible amount of extracts from vanilla beans and no artificial flavors under the Wholesome Pantry brand ("Product").

I. Vanilla

2. Vanilla comes from an orchid plant that originated in Mexico where it was first cultivated.

3. The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for vanilla flavorings.

4. Vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla extract and is responsible for roughly one-third of vanilla's flavor and aroma.

5. The curing of vanilla beans induces the hydrolysis of β-D-glucoside, resulting in vanillin, at concentrations of 1-4% of dry weight of cured beans.

6. The chemical production of vanillin in the late 19th century resulted in foods purporting to contain vanilla, which either contained no vanilla or a trace amount, boosted by low cost, synthetic vanillin.

7. Vanilla's unique flavor is due to hundreds of odor-active compounds besides vanillin, such as acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

8. Methyl cinnamate and cinnamyl alcohol provide cinnamon and creamy notes.

9. Acetovanillone provides a sweet, honey taste.

10. P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

11. 4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral flavor notes.

II. Consumers Seek Real Vanilla because it is a Natural Flavoring Ingredient

12. Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[1]

13. According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

14. Natural flavors, like vanilla, are the extractives or essences from a fruit or vegetable, made through natural processes, such as distillation, roasting, heating, enzymolysis or fermentation. *See* 21 C.F.R. § 101.22(a)(3).

---

[1] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?

15. Extracts from vanilla beans consist only of the flavoring principles from the seed pods of vanilla beans.



16. Artificial flavors are made from synthetic sources or through non-natural processes, such as chemical reactions. *See* 21 C.F.R. § 101.22(a)(1).

17. At least seven out of ten consumers avoid artificial flavors because they have been linked to detrimental health effects, contain synthetic ingredients and are highly processed.

18. All demographics of consumers, from Generation Z to Baby Boomers – say they would pay more for foods with no artificial flavors because they are perceived as more natural.

19. Defendant is aware of consumer avoidance of artificial flavors which is why the front label states, "No Artificial Flavors."

20. New York State regulations require companies to truthfully disclose the source of a product's flavor. *See* 1 NYCRR 259.1(a)(3) contained in Section 259.1 ("Packaging and labeling of food.") (incorporating 21 C.F.R. § 101.22, which controls labeling of flavor sources).

21. Consumers are accustomed to such truthful labeling across food and beverages.

22. For example, the below milk protein drinks – the GNC Lean Shake and Pro Series Muscle Milk – are labeled as "Vanilla Bean" and "Intense Vanilla," with pictures of vanilla beans and a vanilla flower, but are truthfully labeled as "Artificially Flavored."




23. Other types of "vanilla" products, like U-bet Vanilla Syrup, Vanilla Wafers or Vanilla Almond Bark, truthfully tell consumers their vanilla taste is not from extracts from vanilla beans, but artificial vanilla, because they say, "Artificially Flavored."




III. Defendant's Representations are Misleading

24.     Defendant markets the Vanilla Coconutmilk as being flavored with, and by, extracts of vanilla beans, through the statement, "Vanilla," in blue font, contrasting against a white background, and picture of two vanilla beans and a vanilla flower resting on half a coconut.





25.     The front label promises "No Artificial Colors, Flavors or Preservatives."

26.     When these representations are coupled with a general awareness that a label will disclose artificial flavors – instead of promising their absence – consumers have no reason to doubt the Product contains a non-negligible amount of extracts from vanilla beans.

27. A non-negligible amount of extract from vanilla beans is an amount sufficient such that a vanilla taste does not need to be boosted by synthetic vanillin.

28. After all, the Product has a picture of a coconut and contains coconut, shown through the most predominant ingredient of "Coconutmilk."

> **INGREDIENTS:** COCONUTMILK (FILTERED WATER, COCONUT CREAM), CANE SUGAR, CALCIUM CARBONATE, NATURAL FLAVORS, CARRAGEENAN, GUAR GUM, GELLAN GUM, VITAMIN A PALMITATE, VITAMIN D2, VITAMIN B12.

29. However, the "Natural Flavors" ingredient contains a trace amount of extracts from vanilla beans.

30. According to Professor Scott Rankin, a food science professor at the University of Wisconsin-Madison, "the different wordings on the labels amount to an industry shorthand for specific kinds of natural or artificial flavorings."[2]

31. For instance, "Natural flavor…(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level) and other flavorings such as nutmeg that merely trigger an association" with vanilla.

32. Laboratory testing of the Product in 2020 isolated key vanilla flavor compounds, revealing the amount of vanillin was disproportionately greater than if it was only present due to extracts from the vanilla bean.

33. Natural vanillin from extracts of vanilla beans is not isolated commercially, because it is the most important part of vanilla's flavor.

---

[2] Yahoo Food, The One Thing You Need to Know When Buying Vanilla Ice Cream, May 20, 2015.

34. The vanillin was unaccompanied by the expected amounts of key compounds from the vanilla plant – methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, 4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol).

35. The conclusion is that the Product contains a negligible amount of extracts from vanilla beans, if any, and its "vanilla" taste is not from the "Natural Flavors" ("No Artificial Flavors") promised, but from synthetic, non-natural flavorings.

36. The source of this synthetic flavoring is guaiacol, based on its detection at atypically elevated levels, not explained by relation to any other compounds.

37. Guaiacol, a petrochemical precursor, is the source of 85% of synthetic vanillin and is obtained from synthetic benzene and propylene, whose industrial source is petroleum.

38. Converting guaiacol to vanillin requires chemical reactions, such as condensation with glyoxylic acid, decarboxylation, chemical catalysts such as sodium hydroxide or sodium chloride and aromatic substitution.

39. Vanillin from guaiacol is an artificial flavor because it is from an artificial source and made through artificial processes. *See* 21 C.F.R. § 101.22(a)(1).

40. A reasonable consumer cannot perform laboratory testing in the grocery store aisle to find out this information.

41. Nor can a reasonable consumer seek clarification from the ingredient list, because defendant identifies the flavoring as "Natural Flavors," conflating natural and artificial flavoring and deceiving consumers.

42. Defendant is required to identify the flavoring by its specific name, vanillin or "artificial flavor," on the ingredient list.[3]

43. Reasonable consumers must and do rely on defendant to honestly describe the components and features of the Product.

44. Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

45. Defendant sold more of the Product and at a higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

46. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

47. Plaintiff paid more for the Product based on the representations than she would have otherwise paid.

48. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $3.59 per 64 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

49. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

50. Plaintiff Eileen Myers is a citizen of New York.

---

[3] In addition to the "Natural Flavors," assuming the Product contains a de minimis amount of extracts from vanilla beans.

51. Defendant Wakefern Food Corp. is a New Jersey corporation with a principal place of business in Keasbey, Middlesex County, New Jersey.

52. Diversity exists because plaintiff Eileen Myers and defendant are citizens of different states.

53. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

54. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchase of plaintiff and her experiences identified here.

## Parties

55. Plaintiff Eileen Myers is a citizen of Putnam Valley, Putnam County, New York.

56. Defendant Wakefern Food Corp. is a New Jersey corporation with a principal place of business in Keasbey, New Jersey, Middlesex County.

57. Defendant operates close to four hundred (400) grocery stores in the mid-Atlantic states.

58. Most of the stores are operated under the "ShopRite" name.

59. Plaintiff purchased the Wholesome Pantry Vanilla Coconutmilk on numerous occasions within the statutes of limitations for each cause of action, on numerous occasions during 2020, including May 2020, at Shoprite stores, including the ShopRite at 3140 E Main St, Cortlandt, NY 10567.

60. Plaintiff bought the Product because she wanted a food which contained extracts from vanilla beans and relied on the front label representation of the pictures and statements of vanilla and the absence of artificial flavors.

61. The Product was worth less than what Plaintiff and consumers paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

62. Plaintiff paid more for the Product than she would have paid otherwise.

63. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations about its components and ingredients are consistent with its representations.

## Class Allegations

64. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

65. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

66. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

67. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

68. Plaintiff is an adequate representative because her interests do not conflict with other members.

69. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

70. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

71. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

72. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

73. Plaintiff incorporates by reference all preceding paragraphs.

74. Plaintiff and class members desired to purchase a product which contained a non-negligible amount of extracts from vanilla beans and did not contain artificial flavors.

75. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

76. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

77. Plaintiff relied on the representations.

78. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

79. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it possessed functional, nutritional, organoleptic, sensory and qualitative attributes which it did not.

80. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

81. This duty is based on Defendant's outsized role in the market for this type of Product – a grocery store chain that customers and their families have relied on for generations.

82. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

83. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices over the past several years.

84. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

85. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

86. Defendant had a duty to truthfully represent the Product, which it breached.

87. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

88. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

89. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchases of the Product.

90. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

91. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

92. Defendant's fraudulent intent is evinced by its failure to accurately disclose these issues when it knew not doing so would mislead consumers.

## Unjust Enrichment

93. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and
6. Other and further relief as the Court deems just and proper.

Dated:   April 26, 2021

                                                    Respectfully submitted,

                                                    Sheehan & Associates, P.C.

 /s/Spencer Sheehan

Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com
