UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EILEEN MYERS, *individually and on behalf of all others similarly situated*,

                                    Plaintiff,

        -against-

WAKEFERN FOOD CORP.,

                                    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  03/01/2022

No. 20 Civ. 8470 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

This putative class action alleges that Defendant Wakefern Food Corp. misrepresented the purported natural, non-artificial origin of the vanilla flavoring of its "Coconutmilk" from its Wholesome Pantry brand ("the Product") to consumers. (Am. Compl. at 1–9, ECF No. 11.) Plaintiff Eileen Myers, individually and on behalf of others similarly situated, brings this action against Defendant asserting claims for violations of New York's General Business Law §§ 349 and 350, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, fraud, and unjust enrichment. (*Id.* at 9–14.) Presently pending before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15.) For the following reasons, the Court GRANTS Defendant's motion to dismiss.

## BACKGROUND

### I.  Factual Background

The following facts are derived from the Amended Complaint and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion.

Defendant manufactures, markets, and sells coconut milk purporting to contain a non-negligible amount of extracts from vanilla beans and no artificial flavors in its Product, as depicted in the images below:





(Am. Compl. ¶¶ 1, 24.) The label also states that the Product's ingredients include:

> **INGREDIENTS:** COCONUTMILK (FILTERED WATER, COCONUT CREAM), CANE SUGAR, CALCIUM CARBONATE, NATURAL FLAVORS, CARRAGEENAN, GUAR GUM, GELLAN GUM, VITAMIN A PALMITATE, VITAMIN D2, VITAMIN B12

(*Id.* ¶ 28.)

Plaintiff alleges the Product's label is misleading because the Product is not mainly flavored from vanilla and contains artificial flavors.  (*Id.* ¶¶ 26–41.)  Specifically, she alleges that

laboratory testing of the Product in 2020 revealed that "the amount of vanillin[1] was disproportionately greater than if it was only present due to extracts from the vanilla bean." (*Id.* ¶ 32.) She alleges that the vanillin was unaccompanied by the expected amounts of key compounds from the vanilla plant—methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, 4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol). (*Id.* ¶ 34.) Thus, she concludes that "the Product contains a negligible amount of extracts from vanilla beans, if any, and its 'vanilla' taste is not from the 'Natural Flavors' ('No Artificial Flavors') promised, but from synthetic, non-natural flavorings." (*Id.* ¶¶ 32–35.)

Plaintiff inferentially alleges[2] that the source of synthetic vanilla flavoring is guaiacol, a petrochemical precursor that is obtained from synthetic benzene and propylene, whose industrial source is petroleum. (*Id.* ¶¶ 36–39.) As Plaintiff alleges that this vanilla flavoring is artificial because it derives from an artificial source and the result of artificial processes, she avers that Defendant misleads reasonable consumers by conflating natural and artificial flavoring identified in the Product's ingredient list as "Natural Flavors." (*Id.* ¶¶ 39–41.)

Plaintiff claims that Defendant is required to identify the flavoring by its specific name, vanillin or "artificial flavor," on the ingredient list, but that it failed to do so. (*Id.* ¶¶ 42–44.) She avers reasonable consumers, who are willing to pay more for foods with no artificial flavors because they are perceived as more natural, must and do rely on Defendant's representations to honestly describe the components and features of the Product. (*Id.* ¶¶ 17–18, 43.) Instead,

---

[1]Vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla extract and is responsible for roughly one-third of vanilla's flavor and aroma. (Compl. ¶ 4.)

[2] In her response in opposition, Plaintiff admits that this allegation is inferential based on the two alleged findings above because she "cannot be expected to know the exact components of Defendant's Product, whose ingredient profile is a carefully guarded proprietary secret[.]" (Resp. in Opp'n at 24, ECF No. 17.)

Defendant knowingly misrepresented the Product's vanilla flavor origins and sold more of the Product at higher prices that it would have in the absence of this alleged misconduct, resulting in additional profits at the expense of consumers. (*Id.* ¶¶ 19, 44–47.) Particularly, Plaintiff claims that as a result of the false and misleading representations, Defendant sold the Product at a premium price, approximately no less than $3.59 per 64 oz, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold absent the misleading representations and omissions. (*Id.* ¶ 48.)

Plaintiff alleges that she purchased the Product on numerous occasions during 2020 at Shoprite stores within this District, including the one located at 3140 E. Main St., Cortlandt, NY 10567. (*Id.* ¶ 59.) She claims to be among a class of consumers who bought the Product because she wanted a food that contained extracts from vanilla beans and relied on the pictures and statements of vanilla and the absence of artificial flavors. (*Id.* ¶ 60.) Plaintiff further claims that she would not have paid as much for the Product absent Defendant's false and misleading statements and omissions. (*Id.* ¶¶ 61–62.)

## II. Procedural Background

On October 12, 2020, Plaintiff filed the original operative class action complaint (Compl., ECF No. 1.) On March 10, 2021, Defendant filed a letter seeking leave to file a motion to dismiss, which also stated the grounds on which Defendant would move for dismissal. (ECF No. 8.) The next day, Plaintiff requested an extension of time to file an amended complaint that would address the deficiencies set forth in Defendant's letter and obliviate the need for a motion to dismiss, which the Court subsequently granted. (ECF Nos. 9 & 10.)   On April 26, 2021, Plaintiff filed her Amended Complaint on behalf of all purchasers of the Product who reside in New York, asserting claims for (1) violation of New York General Business Law §§ 349 and 350; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) violation of the Magnuson Moss

Warranty Act; (5) negligent misrepresentation; (6) fraud; and (7) unjust enrichment.  (Am. Compl., ECF No. 11.) As relief, Plaintiff seeks both monetary damages and injunctive relief that would require Defendant to correct the Product's allegedly misleading label. (*Id.*)

On May 26, 2021, Defendant again sought leave to file a motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 12 & 14.) On August 17, 2021, the parties filed their respective briefing on the instant motion: Defendant its notice of motion (ECF No. 15), memorandum in support ("Motion," ECF No. 16), reply ("Reply," ECF No. 18); and Plaintiff her response in opposition ("Response in Opposition," ECF No. 17).

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff asserts claims against Defendant for (1) violations of §§ 349 and 350 of the New York General Business Law ("GBL"), (2) negligent misrepresentation, (3) breach of express

warranty, (4) breach of implied warranty of merchantability, (5) violation of the Magnuson Moss Warranty Act, (6) fraud, and (7) unjust enrichment.  (*See* Am. Compl. ¶¶ 9–14.) Defendant seeks to dismiss all claims based on several grounds, including: (1) failure to plausible allege consumer deception; (2) federal preemption; and (3) lack of standing to seek injunctive relief. (*See* Mot. at 15–31.) The Court analyzes each of Plaintiff's claims below.

### I.  New York General Business Law Sections 349 and 350

Section 349 of the GBL involves unlawful deceptive acts and practices, while section 350 involves unlawful false advertising. "The standard for recovery under [section] 350, while specific to false advertising, is otherwise identical to Section 349." *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (2010) (quoting *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)). The elements of a cause of action under both sections 349 and 350 are that: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Id.* (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)). The parties' main dispute in the instant motion involves the second element: whether Defendant engaged in deceptive or materially misleading acts or practices.

To be actionable, the alleged deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26; *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). In determining whether a reasonable consumer would be misled, "[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Pichardo v. Only What You Need, Inc.*, 20-cv-493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (citing *Wurtzburger v. Kentucky Fried Chicken*, 16-cv-08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017)); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("In determining

whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Oswego*, 85 N.Y.2d at 26).

### A.    *"Vanilla" label is not misleading*

Plaintiff first claims that the word "vanilla," viewed together with the picture of two vanilla beans and vanilla flower, on the Product's front label is misleading because it implies that the Product's flavor is derived predominantly from extracts of vanilla beans, when in fact, it contains a negligible amount of the same and artificial flavors.  (Am. Compl. ¶¶ 1, 24, 35.)

*Numerous* other courts have already dismissed near-identical challenges to the use of the word "vanilla" on food labels on the basis that there is nothing in the word "vanilla" itself that would lead a reasonable consumer to understand a product's flavor to be derived mostly or exclusively from the vanilla bean. *See, e.g.*, *Jones v. Orgain, LLC*, No. 20-cv-8463 (VB), 2021 WL 4392783, at *3 (S.D.N.Y. Sept. 24, 2021) (dismissing claim where the label "explicitly states it is 'vanilla bean <u>flavor</u>' ") (emphasis in original); *Garadi v. Mars Wrigley Confectionery US, LLC*, No. 1:19-cv-03209 (RJD)(ST), 2021 WL 2843137, at *3 (E.D.N.Y. July 6, 2021) (explaining the phrase "vanilla ice cream" do not "make any claims about where or in what quantity the vanilla taste comes from. It simply alerts a consumer faced with different flavors that this ice cream tastes like vanilla"); *Robie v. Trader Joe's Co.*, No. 20-cv-07355-JSW, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021) (finding that the phrase "Vanilla Flavored" does not suggest to the reasonable consumer that the flavor comes exclusively from the vanilla bean); *Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221-JSC, 2021 WL 1580827, at *2 (N.D. Cal. Apr. 22, 2021) (dismissing challenge to "Vanilla Soymilk" label because it lacked "any other words or pictures that suggest the vanilla flavor is derived *exclusively* from the vanilla bean") (emphasis in

original); *Dashnau v. Unilever Mfg. (US), Inc.*, No. 19-cv-10102 (KMK), 2021 WL 1163716, at *6 (S.D.N.Y. Mar. 26, 2021) ("[T]he words 'vanilla bean' are used to modify the words 'ice cream,' thereby specifying the flavor consumers can expect. The Product label does not contain an ingredient claim such as 'Made With Vanilla Beans,' or 'Made From Vanilla Beans,' in which case the Court's conclusion would likely be different."); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 581 (S.D.N.Y. 2021) (concluding that the word "vanilla" on the front of the package "appears to describe a flavor more than an ingredient" where there was "no reference to 'vanilla bean' or 'vanilla extract' anywhere on the packaging; nor [was] there any reference to the product being 'made with' or 'made from' any part of the vanilla plant"); *Parham, v. ALDI, Inc.*, No. 1:19-cv-08975 (PGG) (SDA), 2021 WL 709632, at *3 (S.D.N.Y. Feb. 15, 2021) ("A reasonable consumer would understand that the word 'vanilla' on the front of the carton describes how the Product tastes, not what it contains, especially in circumstances where the ingredients listed . . . do not mention vanilla at all."); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 162 (S.D.N.Y. 2021) ("A reasonable consumer would understand that 'vanilla' is merely a flavor designator, not an ingredient claim."); *Wynn v. Topco Assocs., LLC*, No. 19-cv-11104, 2021 WL 168541, at *4 (S.D.N.Y. Jan. 19, 2021) (finding "a reasonable consumer would [not] see a 'Vanilla Almondmilk' beverage and be misled into concluding that the vanilla flavor derived exclusively from real vanilla" where the "front label makes no explicit claims about the ingredients constituting the flavor . . . for example, [it does not] say 'made with real vanilla extract' or even mention vanilla extract at all"); *Barreto v. Westbrae Natural, Inc.*, No. 19-cv-9677 (PKC), 2021 WL 76331, at *4 (S.D.N.Y. Jan. 7, 2021) (explaining that the words "Vanilla Soymilk" and "Natural Vanilla Flavor With Other Natural Flavors" make "a representation regarding . . . flavor [but do] not imply or represent [that] the source of that flavor comes exclusively or predominantly

from natural vanilla"); *Cosgrove v. Blue Diamond Growers*, No. 19-cv-8993, 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020) (concluding that a reasonable consumer would associate the word "vanilla" with a flavor, rather than a particular ingredient); *Pichardo*, 2020 WL 6323775, at *5 (finding that "reasonable consumers associate the word 'vanilla' with a flavor, not an ingredient"); *Steele v. Wegmans Food Mkts. Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (explaining that the word "vanilla" assists buyers in determining the *flavor* of a product, rather than the source of that flavor).[3]

Here, as in those cases, the Court concludes that the Product's "vanilla" label would not lead a reasonable consumer to understand its flavor to be derived mostly or exclusively from the vanilla bean. "Defendant's Product does not use the words 'vanilla bean' or 'vanilla extract,' nor does it use language such as 'made with vanilla; or anything similar." *Cosgrove*, 2020 WL 7211218, at *4. Instead, "[t]he Product makes one representation—that it is vanilla flavored—and Plaintiff[] do[es] not allege that the Product did not deliver on that representation." *Id.* Hence, when assessing the Product's packaging as a whole, "a reasonable consumer would conclude that the [coconut milk only] has a vanilla flavor . . . . There is no claim anywhere on the packaging that . . . vanilla is the predominant source of the vanilla flavor . . . ." *Barreto*, 518 F. Supp. 3d at 803. Simply put, a reasonable consumer would associate the word "vanilla" in the Product's front label with the coconut milk's *flavor* and not as a particular ingredient, much less the predominant one.

> **B.**    *Plaintiff fails to sufficiently plead how the "No Artificial . . . Flavors" label is misleading*

Plaintiff next claims that the Product's packaging is misleading because (1) its ingredient list contains only "natural flavors" and (2) its front label represents to contain "no artificial . . .

---

[3] Plaintiff's counsel, Spencer Sheehan of Sheehan & Associates, P.C., was also counsel in each of all these cases.

flavors," when in fact, it contains synthetic, non-natural vanilla flavoring. (Am. Compl. ¶ 24.) Specifically, she alleges that laboratory testing of the Product in 2020 revealed that "the amount of vanillin was disproportionately greater than if it was only present due to extracts from the vanilla bean." (*Id.* ¶ 32.) She further alleges that the vanillin was unaccompanied by the expected amounts of key compounds from the vanilla plant—methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, 4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol). (*Id.* ¶ 34.) Thus, she concludes that these results suggest that "the Product contains a negligible amount of extracts from vanilla beans, if any, and its 'vanilla' taste is not from the 'Natural Flavors' ('No Artificial Flavors') promised, but from synthetic, non-natural flavorings." (*Id.* ¶¶ 32–35.)

But the Court concludes that Plaintiff has failed to sufficiently allege that Defendant misrepresented that its Product contains no artificial flavors. To begin, Plaintiff claims that the Product was allegedly subjected to a laboratory test, but she fails to provide any details whatsoever about this laboratory test entailed. She does not, for instance, describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc. *See Santiful v. Wegmans Food Markets, Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022).

Further, Plaintiff argues that she has alleged "several factual and inferential claims that sufficiently establish that the guaiacol and vanillin in this Product are from artificial sources." (Resp. in Opp'n at 16.) She contends that "she cannot be expected to know the exact components of Defendant's Product, whose ingredient profile is a carefully proprietary secret[.]" (*Id.*) To be sure, the Court must accept the Amended Complaint's allegations as true and construe them allegations in the light most favorable to Plaintiff; however, it is not required to accept Plaintiff's

10

conclusory statements without more.  *See Iqbal*, 556 U.S. at 678. Notably, Plaintiff fails to substantiate how exactly the two alleged findings from the purported lab test helped her arrive at the conclusion that the Product is made of artificial flavors. *See, e.g.*, *Barreto*, 518 F. Supp. 3d at 803 ("[T]he analysis on which the Complaint heavily relies does not state or otherwise plausibly support the conclusion that the added vanillin comes from artificial rather than natural sources. . . The results of the . . . analysis list the detected ingredients as including 'vanillin' but it does not purport to identify the source of vanillin as natural or artificial."). It is not as if these findings concern matters of common knowledge for which such conclusion would evidently follow from Plaintiff's alleged findings. In other words, from Plaintiff's conclusory allegations alone, the Court cannot draw a reasonable inference that the Product's vanilla flavoring derives from artificial sources. Accordingly, the Court concludes that Plaintiff has failed to sufficiently allege that Defendant misrepresented that its Product contains no artificial flavors

### C.    *No private enforcement of the Food and Drug Administration regulations*

Throughout her Amended Complaint, Plaintiff also refers to certain regulations of the Food and Drug Administration (FDA) in alleging that Defendant misrepresented the origins of the Product's vanilla flavoring in its packaging. (*See* Am. Compl. ¶¶ 14, 16, 20, 39.)  But to the extent that Plaintiff is bringing a separate cause of action premised on an alleged violation of an FDA regulation, the case law is clear that any such claim must be dismissed because there is no private right of action to enforce FDA regulations. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997); *Barreto*, 518 F. Supp. 3d at 805; *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 104 n. 8 (E.D.N.Y. 2020); *Boata v. Pfizer, Inc.*, No. 10-cv-4390, 2010 WL 4878872, at *5 (S.D.N.Y. Dec. 1, 2010); *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010).

"Nor does New York's [GBL] fill the gap by creating a state law claim solely as a result of a violation of federal labelling regulations." *Barreto*, 518 F. Supp. 3d at 805. To state a GBL claim, the challenged act must be "inherently deceptive," and "such acts cannot be re-characterized as 'deceptive' simply on the grounds that they violate another statute which does not allow for private enforcement." *Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 127–28 (2d Cir. 2017) (discussing *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) and *Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001)).

The Second Circuit has explained the relationship between a GBL claim and violations of other statutes that do not provide a private right of action:

> [A] GBL claim is viable where the plaintiff 'make[s] a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim' under another statute that is not independently actionable, but fails where the violation of the other statute by conduct that is not inherently deceptive is claimed to constitute a deceptive practice **\*806** that serves as the basis for the GBL § 349 claim.

*Id.* (quoting *Broder*, 418 F.3d at 200). Hence, Plaintiff cannot state a claim here because, for reasons described above, the conduct alleged to violate the FDA regulations is not so inherently deceptive as to be misleading to a reasonable consumer under GBL §§ 349–50. *See Pichardo*, 2020 WL 6323775, at \*3 n.6 (explaining whether the labeling of defendant's products violates FDA regulations does not determine whether it is misleading under GBL §§ 349–350); *Steele*, 472 F. Supp. 3d at 50 ("The point here is not conformity with this or that standard (which is left to the authorities to regulate) but whether the marketing presentation was deceptive."); *Sharpe*, 481 F.Supp.3d at 104 n.8 ("To the extent plaintiffs bring a separate cause of action premised on an alleged violation of a [FDA] regulation, the claim is dismissed."); *see also North Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (finding that plaintiff failed to show a likelihood of success on the merits that a product's labeling was impermissibly

misleading to consumers under GBL §§ 349–50 even though defendant's product labeled as "100% Pure Olive Oil" violated FDA standards).

Because the Court concludes that Plaintiff has not plausibly alleged that the Product's label is misleading to a reasonable consumer, it will dismiss Plaintiff's claims under GBL §§ 349 and 350 of the GBL. It is therefore not necessary to reach Defendant's argument that these claims are preempted by federal law. *See Barreto*, 518 F. Supp. 3d at 806.

## II. Remaining Claims

Plaintiff also asserts claims for negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, fraud, and unjust enrichment. These claims, which largely hinge on the core theory of consumer deception, all fail as a matter of law. *See id.* at 806 (dismissing claims for negligent misrepresentation, breach of warranty, fraud, and unjust enrichment on the basis that the court "already determined that [plaintiff] has failed to allege that the product's labeling would be likely to deceive or mislead a reasonable consumer").

### A.    *Plaintiff's claim for negligent misrepresentation fails*

Under New York law, a claim for negligent misrepresentation requires the plaintiff to plausibly allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Marc J. Bern & Partners LLP v. U.S. Legal Support, Inc.*, No. 17 Civ. 6771 (ER), 2018 WL 2943784, at *6 (S.D.N.Y. June 11, 2018) (citing *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007)). "A special relationship may be established by 'persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that    reliance   on   the   negligent

misrepresentation is justified.'" *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011)

(quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)).

"[G]enerally, a special relationship does not arise out of an ordinary arm's length business

transaction between two parties." *Marc J. Bern*, 2018 WL 2943784, at *6 (quoting *MBIA Ins.

Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 296–97 (2011)). Factors bearing on this

inquiry include "whether the person making the representation held or appeared to hold unique or

special expertise; whether a special relationship of trust or confidence existed between the parties;

and whether the speaker was aware of the use to which the information would be put and supplied

it for that purpose." *Id.* at *6. Because negligent misrepresentation sounds in fraud, it is subject

to Rule 9(b)'s heightened pleading standards. *See, e.g.*, *Yoomi Babytech, Inc. v. Anvyl, Inc.*, No.

20 CIV. 7933 (ER), 2021 WL 4332258, *13 (S.D.N.Y. Sept. 22, 2021).

As discussed above, the Court finds that Plaintiff has not plausibly alleged that the

Product's label imparts incorrect information to consumers. Furthermore, Plaintiff has not

plausibly alleged the existence of a special or a privity-like relationship in order to bring a negligent

misrepresentation claim. Plaintiff claims that a duty exists "based on defendant's position, holding

itself out as having special knowledge and experience in the sale of the product type." (Am. Compl.

¶ 87.) But the case law is clear that the transactions alleged are insufficient to establish a special

relationship for the purposes of a negligent representation. *See, e.g.*, *Twohig*, 519 F. Supp. 3d at

166–67 (collecting cases on how basic commercial transactions do not give rise to a special

relationship); *Wynn*, 2021 WL 168541, at *6 (concluding the same); *Sarr v. BEF Foods, Inc.*, No.

18-cv-6409 (ARR) (RLM), 2020 WL 729883, at *6–7 (E.D.N.Y. Feb. 13, 2020) (finding no

special relationship where the alleged misrepresentations were on a food product's label, and

finding no privity absent a direct buyer-seller relationship between the parties); *see also Aetna*

*Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005) ("no duty of care arises" for purposes of a negligent misrepresentation claim when the alleged misrepresentation is "directed at a faceless or unresolved class of persons") (internal quotation marks omitted). Accordingly, Plaintiff's negligent misrepresentation claim fails.

### B.   *Plaintiff's claim for breach of express warranty fails*

To state a claim for an express breach of warranty under New York law, plaintiffs must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014).  As discussed above, as alleged, the Product does not represent that its flavor is derived predominantly from extracts of vanilla beans and a reasonable consumer would not interpret the representation of "Vanilla" to make such claim. Such "[g]eneralized statements by the defendant . . . do not support an express warranty claim if they are such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *Ault v. J.M. Smucker Co.*, 13-cv-3409 (PAC) 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014); *see also Barreto*, 518 F. Supp. 3d at 806. Accordingly, Plaintiff's breach of express warranty claim fails.

### C.   *Plaintiff's claim for breach of implied warranty of merchantability fails*

A breach of implied warranty of merchantability occurs when the product at issue is "unfit for the ordinary purposes for which such goods are used." N.Y. U.C.C. Law § 2-314. While the Amended Complaint alleges that the Product does not derive its vanilla flavor from natural flavors, it does not otherwise allege that the Product is unfit for human consumption. *See, e.g.*, *Barreto*, 518 F. Supp. 3d at 807 (dismissing implied warranty of merchantability claim because "there were no allegations that the soymilk beverage was unfit for . . . human consumption"); *Silva v. Smucker*

*Nat. Foods, Inc.*, No. 14-CV-6154 (JG), 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) (dismissing implied warranty claim because "[w]here the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality."). Notwithstanding, Plaintiff argues this claim is viable because the Product was not "not capable of passing without objection in the trade." (Resp. in Opp'n at 27.) But even on this basis, the claim fails for the same reasons as the express warranty claim. *See Barreto*, 518 F. Supp. 3d at 807. Accordingly, Plaintiff's claim for breach of implied warranty of merchantability fails.

### D.  *Plaintiff's claim under the Magnuson Moss Warranty Act fails*

Plaintiff brings a claim under the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.* (Am Compl. at 12). "To state a claim under MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Gr. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015). Hence, as her state law claims for express and implied warranty fail, Plaintiff's MMWA claim similarly fails for the same reasons.

### E.  *Plaintiff's claim for fraud fails*

To state a claim of fraud under New York law, Plaintiff must allege (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff. *Schlaifer Nance & Co. v. Estate of* Warhol, 119 F.3d 91, 98 (2d Cir. 1997). A claim of fraud must be alleged with the particularity required by Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015) (quotation marks omitted). Rule 9(b) permits a plaintiff to allege scienter generally, but the Second Circuit has "repeatedly required

plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States ex rel. Tessler v. City of New York*, 712 Fed. App'x 27, 29 (2d Cir. 2017) (summary order) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

As discussed above, the Court concludes that Plaintiff has failed to allege a material misrepresentation of fact or omission because a reasonable consumer would not conclude that the Product's label communicates that the Product's vanilla flavor derives predominantly from extracts of vanilla beans. Furthermore, Plaintiff fails to plead facts that give rise to an interest of fraudulent intent. The Amended Complaint merely contains conclusory statements that Defendant's intent "is evinced by its failure to accurately disclose [the attributes and qualities of the Product] when it knew not doing so would mislead consumers." (Am. Compl. ¶ 92.) This is insufficient. *See Barreto*, 518 F. Supp. 3d at 808 (dismissing the fraud claim for the same reasons); *Santiful*, 2022 WL 268955, at *7. Therefore, Plaintiff's fraud claim fails.

### F.    *Plaintiff's claim for unjust enrichment fails*

Under New York law, an unjust enrichment claim requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d. Cir. 2000) (internal quotation marks omitted). Plaintiff has failed to allege that any gains to Defendant would be unjust because she has not plausibly alleged that a reasonable consumer would be misled or deceived by the Product's label. *See, e.g.*, *McVetty v. TomTom N. Am., Inc.*, No. 19 CV 4908 (NSR), 2021 WL 965239, at *8 (S.D.N.Y. Mar. 13, 2021). Thus, Plaintiff's unjust enrichment claim fails.

## III. Injunctive Relief

Finally, Plaintiff seeks injunctive relief for Defendant "to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws." (Axm. Compl. at 14.)  Because the underlying claims

on which her requested injunctive relief depends fail, the Court denies Plaintiff's request for injunctive relief.

IV. **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after having the benefit of a pre-motion letter from Defendant stating the grounds on which it would move to dismiss. (ECF No. 9.) Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim.*") (alteration, footnote, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading

defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, while Plaintiff requested leave to file a Second Amended Complaint within the last sentence of her response in opposition, she has not otherwise suggested that she is in possession of facts that would cure the deficiencies that Defendants highlighted in the instant motion and that the Court highlighted in this opinion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend); *see also Twohig*, 519 F. Supp. 3d at 169 (dismissing substantially similar claims involving vanilla flavoring in soymilk with prejudice and without leave to amend because plaintiff had already amended once after having the benefit of a pre-motion letter from defendant stating the grounds on which it would move to dismiss).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss (ECF No. 15) and DISMISSES Plaintiff's Amended Complaint with prejudice. The Clerk of Court is directed to terminate the motion at ECF No. 15 and this action, to enter judgment accordingly, and to close the case.

Dated: March 1, 2022            SO ORDERED:
      White Plains, NY

                              NELSON S. ROMÁN
                        United States District Judge

20